WM. NEWSOM, guardian, *ad litem*, of CELINA E. RAMSEY, *vs.* JESSE TUCKER, executor of BENJAMIN RAMSEY, deceased, defendant in error.

Whilst the recognition, by the State of Georgia, of the abolition of slavery in its borders, may have been destructive of legacies of that species of property, as also of the general testamentary scheme of a testator, such facts furnish no sufficient grounds of *caveat* to the probate of a will.

Probate in solemn form.    Emancipation.    Decided by Judge VASON.    Lee Superior Court, April Term, 1867.

On the eighth day of January, 1865, in Lee county, Georgia, BENJAMIN RAMSEY, made and executed, in the presence of three witnesses, the following as his last will and testament:
* * * * * *    ITEM 1ST. I give and bequeath to my daughters, Mrs. Penelope Carrol and Mrs. Martha Freeman, lot of land (No. 143) number one hundred and forty-three, in the (2d) second district of said county, to be equally partitioned off and the half falling to each, I give and bequeath to them for and during their natural lives, and at their death to such child or children as they may leave living at their death, and in no event to be subject to the debts, contracts or liabilities of any husband they may have.

ITEM 2D. I give and bequeath to my son, Henry C.

Ramsey, lot of land number one hundred and forty-seven, (147) in the (2d) second district of said county, together with all the improvements on the same, and negro boy Elick, about eleven years old, to have and hold them during his natural life, and at his death to such child or children as he may have living at his death, or may be born within the usual period of gestation thereafter, but in no event to be subject to his debts, contracts or liabilities. I further give and bequeath to him in fee simple my calico-colored horse, Celam, one bed and furniture, my small yoke of oxen and cart, one cow and calf and one sow and pigs.

ITEM 3D. I give and bequeath to my daughter, Rebecca A. Ramsey, lot of land number one hundred and forty-eight, (148) in the (2d) second district of said county, and negro girl Jaqueline, about eleven years of age, for and during the natural life of my said daughter, and at her death to such child or children as she may have living, and said land and negro in no event to be subject to the debts, contracts or liabilities of my said daughter, or any husband she may have. I further give to my said daughter, in fee simple, two cows and calves, one bed and furniture, and one sow and pigs. And I further will and desire that, my said daughter, as long as she remains single, be allowed to remain and live in the house where I now live. It is further my will and desire, and I hereby bequeath, with the lot of land herein given to my said daughter, all the improvements on the same, including gin-house and screw, and the sugar-mill and boiler, but my son Henry is to have the use of them as long as my said daughter lives in the house with him.

ITEM 4TH. It is my will and desire that all of my other negroes, not herein otherwise disposed of, be equally divided, share and share alike between my daughters, Penelope Carrol, Martha Freeman, Rebecca A. Ramsey, and my son Henry C. Ramsey, and my grand-daughter, Celina Elizabeth Ramsey, daughter of my son, Benjamin Ramsey, the share falling to each of them, for and during their lives, and at their death to such child or children as they may have living at their death, and in no event to be subject to their debts, contracts,

or liabilities, or the debts, contracts or liabilities of any husband they may have; and should my said grand-daughter die, without leaving child or children surviving her, then I desire her said share of negro property to be equally divided between my said children or their representatives, and I hereby appoint my friend, Jesse Tucker, of said county, trustee for my said children and grand-child.

ITEM 3D. I desire my executor, hereinafter appointed, to sell all my other property not otherwise disposed of by this will, at such time, after my death and under such circumstances, either privately or publicly, as may in his judgment be deemed best, and with the proceeds pay my just debts and the balance after the payment of my debts, I wish equally divided between my daughters, Mrs. Penelope Carrol and Mrs. Martha Freeman, provided said balance does not exceed two thousand dollars, and in the event it does, I desire the said excess to be equally (divided) between my daughters, Penelope Carrol, Martha Freeman, Rebecca A. Ramsey and my son, Henry C. Ramsey. My object in giving my two daughters Mrs. Carrol and Mrs. Freeman, the two thousand dollars in the event of there being that much, is to make them up the difference in the land, as nearly as I can. If, in the opinion of my executor, it shall be thought best to postpone a sale of my other property herein mentioned, he shall keep up my plantation until such sale, and not pay off the legacies or give off the property until after the sale. I desire such money as I may have on hand at my death, and such as may be collected from debts due me, to be put with the proceeds of the sale of the aforesaid property, and disposed of as the same is herein, in this item, directed to be.

ITEM 6TH. I nominate and appoint my friend Jesse Tucker, of said county, my executor to this will."

Upon application to prove this will in solemn form made by the executor, a *caveat* was filed by William Newsom, duly appointed guardian, *ad litem*, of said grand-daughter, Celina E. Ramsey.

The objections to the probate were:

1ST. Because said pretended will was revoked, for the reason

that said pretended will constitutes one testamentary scheme, showing that it was the intention of said pretended testator, to divide his estate between his heirs-at-law, of whom there were five, Mrs. Carrol, Mrs. Freeman, Rebecca and Henry Ramsey, and his grand-child, Celina E. Ramsey, minor child of his son, Benjamin H. Ramsey, deceased, but that after the execution of said pretended will, and before the death of testator, such a change took place in the condition and situation of his estate that the 4th item of said pretended will, at and before his death, was inoperative and void, so that testator's scheme, disclosed by said pretended will was defeated and said will revoked, as it could not be presumed that said testator intended the other portions of said will to take effect, thereby disinheriting *caveator's* ward, in violation of his intention, expressed in said pretended will.

2D. Because said pretended will is void, for the reason that the 4th item of said pretended will conveying slaves, was at the time of testator's death illegal, and the said pretended will so constitutes, one testamentary scheme, that the remaining portions thereof cannot give effect to the testator's intentions, but on the contrary would violate his intention as disclosed by said pretended will, by disinheriting *caveator's* ward and one of his heirs-at-law.

3D. Because said pretended will is void for the reason that the whole of said will constitutes and discloses one testamentary scheme, the testator dividing his estate, consisting of lands, negro slaves, and other property, among all his heirs-at-law, showing that at the making thereof and at his death he believed he owned all the property conveyed by said will and intended to be conveyed thereby, and that the same would take effect and be beneficial to all the objects of his bounty as disclosed therein, whereas he was mistaken as to the kinds of property he owned and the value thereof and had no property, of any value whatever, in the negro slaves bequeathed by the 4th item of said pretended will, so that by reason of such mistake, his testamentary scheme as disclosed by said pretended will was destroyed, and said pretended will

Newsom, Guard. *vs.* Tucker, Ex'r.

is a violation of testator's intention and a fraud upon the rights of *caveator's* ward.

It was on the appeal by consent, and was by consent submitted to the Judge without a jury.   *Caveator* waived the examination of more than one of the attesting witnesses.

The witness examined testified that he saw testator sign, seal, declare and publish the paper (aforesaid) as his last will and testament, that witness John H. Pope and Charles H. Conners signed the same as witnesses by request of testator, and in his and each other's presence ; that at that time testator was of sound and disposing mind and memory ; that at the time of its execution, testator owned three lots of land which composed his plantation in the 2d district of said county, containing about six hundred acres, twenty negro slaves and other personal property ; that the land was then (when the will was executed) worth $35 per acre in Confederate currency, and said slaves worth on an average $2,000 or $2,500 in said currency and his other personal property was worth $6,000 or $7,000 in said currency ; that after the close of the war, and now said land was and is worth $10 per acre in greenbacks, and all other personal property of testator (besides the slaves who were now free) was and is worth $1,800 ; that testator died in November, 1865, during the session of the Convention of the State of Georgia, at Milledgeville; that the legatees named in said will are all of the heirs-at-law of said testator.

Propounder then read in evidence the will, and the testimony was closed.

The Court admitted the will to probate in solemn form. *Caveator* assigns this as error.

F. H. WEST, attorney for plaintiff in error.

WRIGHT & WARREN, attorneys for defendant in error.

HARRIS, J.

When the will of BENJAMIN RAMSEY, made in January, 1865, was presented for probate before the ordinary, a *caveat*

was filed by the plaintiff in error, chiefly on the ground " that the will constituted one testamentary scheme, and that that scheme had been defeated by what subsequently occurred, to-wit: the emancipation of the slaves, by the recognition of the State."

Upon this the Ordinary was asked to refuse the probate of this will.

However unequal the legacies may have been made by the recognition in the State Constitution of the emancipation of slavery produced by the recent war, it is to us very clear that the Court of Ordinary has no jurisdiction over such a question. Its jurisdiction is limited by law to the making and execution of the will, and beyond the matters connected therewith it has no authority to go. The " *caveat*" was not decided by the Ordinary. An appeal by consent was taken to the Superior Court, and by Judge VASON the Ordinary was required to admit the will to probate.

We affirm the judgment.